| | | |
|---|---|---|
| MICHAEL BROOKS and<br>KASEY BROOKS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-146-HSM-MCLC |
| | ) | |
| LAUGHLIN MEMORIAL HOSPITAL, INC. | ) | Jury Trial Demanded |
| GREENEVILLE COLLECTION SERVICE, | ) | |
| INC., CHESNUT LAW OFFICE, LLP, and | ) | |
| ALEX A. CHESNUT, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' LAUGHLIN MEMORIAL HOSPITAL, INC. AND GREENEVILLE COLLECTION SERVICE, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## INTRODUCTION

Plaintiffs Michael Brooks (Mr. Brooks) and Kasey Brooks (Mr. Brooks) file this response in opposition to Defendants' Laughlin Memorial Hospital, Inc. (Laughlin) and Greeneville Collection Service, Inc. (Greeneville Collection) (collectively "Defendants") Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) (Motion).  **See Doc. 27.**

## STATEMENT OF FACTS

Mr. Brooks is an "applicant" as defined by 15 U.S.C. § 1691a(b), a "consumer" as defined by 15 U.S.C. § 1692a(3), a receiving spouse of the medical treatment from Laughlin for the alleged debt, and a contracting spouse for the medical treatment from Laughlin received by her for the alleged debt.  Mrs. Brooks is a "consumer" as defined by 15 U.S.C. § 1692a(3), a non-receiving spouse of the medical treatment from Laughlin for the alleged debt, and a non-contracting spouse

1

for the medical treatment from Laughlin received by Mr. Brooks for the alleged debt. Although Mrs. Brooks did not apply for the credit and the Plaintiffs have not opted in by signing any agreement designating which property is community property and how to divide it accordingly, the Defendants have treated him as an "applicant" as defined by 12 C.F.R. § 202.2(e); 12 C.F.R. § 1002.2(e). **See Doc. 11, Page ID # 114-115, ¶¶ 13-15.**

Laughlin is a "person" (as defined by 15 U.S.C. § 1691a(f)), who regularly extends "credit" (as defined by 15 U.S.C. § 1691a(d)), by granting rights to debtors to defer payment of debt for medical services or by allowing debtors to incur debts for medical services and defer payment, and is, therefore, a "creditor", as defined by 15 U.S.C. § 1691a(e). Greeneville Collection is an agent of Laughlin, and is regularly engaged in collection of consumer debts and uses instrumentalities of interstate commerce or the mails to communicate through telephone calls and collection letters, paying filing fees and process service fees to file lawsuits and requests for issuance of garnishments of wages and levies of bank accounts, preparing sworn affidavits for its clients to sign in support of collection lawsuits, all in an effort to collect or attempt to collect consumer debts owed or due or asserted to be owed or due another, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6). Defendant Chesnut Law Office, LLP (Chesnut Law) and its employees, including Defendant Alex A. Chesnut (Alex Chesnut) (collectively "Chesnut Defendants"), acting as agents of their clients, are regularly engaged in collection of consumer debts owed or due or asserted to be owed or due another and attempts to collect them by preparing civil summons for collection lawsuits, prosecuting collection lawsuits to collect consumer debts owed to Greeneville Collection's clients, using collection communications in the form of collection letters and collection lawsuits, and attempting to collect the debts in person, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6). Alex Chesnut is a "debt collector" as defined by 15 U.S.C. § 1692a(6). **See Doc. 11, Page ID 115, ¶¶ 16-19.**

2

Defendants have alleged that the Plaintiffs incurred an obligation to pay money arising out of a transaction in which Laughlin extended "credit" (as defined by 15 U.S.C. § 1691a(d)) to Mr. and Mr. Brooks for medical services provided to Mr. Brooks without requiring him to pay for them in full when provided. **See Doc. 11, Page ID # 115-116, ¶ 20.** The debt incurred by Mr. Brooks is for an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5), namely, a debt for medical services allegedly owed to Laughlin by Mr. Brooks, and the debt allegedly incurred by Mrs. Brooks is for an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5), namely, a debt for medical services allegedly owed to Laughlin by Mrs. Brooks. **See Doc. 11, Page ID # 116, ¶¶ 21-22.** After default, Laughlin hired Greeneville Collection initially, and Chesnut Law and Alex Chesnut eventually as its agents to collect the alleged debt from the Plaintiffs. **See Doc. 11, Page ID # 116, ¶ 23.**

Greeneville Collection drafted and prepared an affidavit of sworn account (sworn affidavit) and presented it to Laughlin, who allegedly signed it in front of a notary and returned it to Greeneville Collection, which then presented the sworn affidavit to Alex Chesnut, who prepared the civil summons and returned both the civil summons and sworn affidavit to Greeneville Collection, which filed it in state court on August 28, 2017 (collection lawsuit). **See Doc. 11, Page ID # 116-117, ¶ 25; Doc. 11-1.** The collection lawsuit was returned to Greeneville Collection by the state court, which then hired a process server to attempt proper service on both Plaintiffs, and Mr. Brooks was not properly served in accordance with Tenn. Code Ann. § 16-15-901(b) and Mrs. Brooks was not served at all. **See Doc. 11, Page ID # 117, ¶¶ 26-27.** The civil summons and

3

sworn affidavit were filed in connection with collection of the debt and in an attempt to collect the debt, and each is a "communication" as defined by 15 U.S.C. § 1692a(2). **See Doc. 11, Page ID # 117, ¶ 28.** The civil summons states that Laughlin is the state court plaintiff and that the collection lawsuit was brought by Laughlin "for an account past due and owing in the amount of $2631.44, plus court costs in the amount of $150.00 and service of process fees in the amount of $52.00." **See Doc. 11, Page ID # 117, ¶ 29; Doc. 11-1, Page ID # 133, p. 1.** The civil summons also states: "This is an attempt to collect a debt; and any information obtained will be used for that purpose." **See Doc. 11, Page ID # 117, ¶ 30; Doc. 11-1, Page ID # 133.** The sworn affidavit states that:

> CREDITOR: LAUGHLIN MEMORIAL HOSPITAL, INC.
> DEBTORS(S): MICHAEL GENE BROOKS and KASEY BROOKS
> PATIENT: MICHAEL GENE BROOKS
> DATE OF SERVICE: 12/10/2014
> BALANCE: $2631.44
> ACCOUNT #22941728
> AGENCY #397632

**See Doc. 11, Page ID # 117, ¶ 31; Doc. 11-1, Page ID # 134.** The sworn affidavit also states:

> THE UNDERSIGNED, PLAINTIFF OR PLAINTIFF'S AUTHORIZED AGENT MAKES OATH BASED ON PERSONAL KNOWLEDGE THAT THE ANNEXED ACCOUNT IS JUST, DUE AND UNPAID. ALL LAWFUL OFFSETS, CREDITS AND PAYMENTS HAVE BEEN ALLOWED AND THE CORRECT BALANCE IS SHOWN ABOVE FOR SERVICES RENDERED AND/OR GOODS SOLD AND DELIVERED TO THE DEBTOR OR ON THE DEBTOR!S BEHALF AT THE DEBTOR'S SPECIAL REQUEST.

> TO THE BEST OF MY INFORMATION AND BELIEF, AFTER INVESTIGATION OF DEFENDANT'S EMPLOYMENT, I HEREBY MAKE AFFIDAVIT THAT THE DEFENDANT IS/IS NOT A MEMBER OF A MILITARY SERVICE.

> BY SIGNATURE BELOW, PLAINTIFF OR PLAINTIFF'S AGENT GIVES AUTHORIZATION FOR ALEX A. CHESNUT, ATTORNEY AT LAW, TO REPRESENT THEM IN THIS MATTER.

4

**See Doc. 11, Page ID # 117-118, ¶ 32; Doc. 11-1, Page ID # 134.** The sworn affidavit was allegedly signed by an individual named Charles H. Whitfield, Jr. in front of a notary named Elizabeth Jane Gosnell on August 23, 2017. **See Doc. 11, Page ID # 118, ¶ 33; Doc. 11-1, Page ID # 134.** A default judgment was entered against both Plaintiffs on November 16, 2017 in the amount of $2,631.44. **See Doc. 11, Page ID # 118, ¶ 34; Doc. 11-1, Page ID # 133.**

## LEGAL ARGUMENT

### I.   APPLICABLE LEGAL STANDARDS FOR RULE 12(c).

Plaintiffs agree with the Defendants that "[a] motion for judgment on the pleadings, filed pursuant to Fed. R. Civ. P. 12(c) . . . is governed by the same standard that applies to motions filed pursuant to Fed. R. Civ. P. 12(b)(6)". **See Doc. 27, Page ID # 244-246.** "When deciding a motion to dismiss under Rule 12(b)(6) . . ., the district court must construe the complaint in the light most favorable to Plaintiff and must accept all the factual allegations contained in the complaint as true." *See Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010) (citing to *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). "In order to survive a Rule 12(b)(6) motion to dismiss, [Plaintiffs'] complaint need only enough facts to state a claim to relief that is plausible on its face" (*See Paige v. Coyner*, at 277 (referencing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)), and "give the defendant fair notice of . . . the . . . claim and the ground upon which it rests" [*Twombly,* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)]. "[C]laim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).

Plaintiffs have made specific allegations regarding Laughlin's Equal Credit Opportunity Act (ECOA) and Regulation B violations (**See Doc. 11, Page ID # 118-121, ¶¶ 35-46)** and Greeneville Collection's Fair Debt Collection Practices Act (FDCPA) violations (**See Doc. 11, Page ID # 121-**

**5**

**127, ¶¶ 47-74)**, which include sufficient facts to satisfy the plausibility test. *Iqbal* at 1949; *Twombly* at 570 ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.") "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal* at 1950. Plaintiffs have given the Defendants fair notice of their claims and the grounds upon which they rest. Defendants' Motion filed under Rule 12(c) should be denied.

## II.  FDCPA CLAIMS.

### A.  PLAINTIFFS' ALLEGATIONS STATE PLAUSIBLE CLAIMS.

Construing Plaintiffs' First Amended Complaint in the light most favorable to Plaintiffs and accepting that all the factual allegations contained in the complaint as to the limited violations addressed by the Defendants in the Motion are true, these allegations contain sufficient facts to state claims plausible on their face. The allegations give the Defendants fair notice of what the claims are and the grounds upon which they rest, and allow the Court to draw the reasonable inference that they are liable for the violations alleged.

### B.  ROOKER-FELDMAN.

The Defendants' initial argument regarding Plaintiffs' FDCPA claims is that some of them should be dismissed because of the *Rooker-Feldman* doctrine. **See Doc. 27, Page ID # 247-251.** Plaintiffs' FDCPA claims in their First Amended Complaint are that they were injured by Greeneville Collection and the other FDCPA defendants violations of the Fair Debt Collection Practices Act (FDCPA). **See Doc. 11, Page ID # 121-127, ¶¶ 47-74.** The Defendants' general argument on the Rooker-Feldman doctrine is based on the premise that Plaintiffs' claims are all made because the Defendants obtained a judgment against the Plaintiffs in state court. **See Doc. 27, Page ID # 247-251.**

6

*Rooker-Feldman* doctrine attacks on consumer claims have been very rare in this district, mainly because of the Sixth Circuit Court of Appeals decision many years ago in *Todd v. Weltman, Weinberg & Reis Co., L.P.A.,* 434 F.3d 432 (6th Cir. 2006). A decision which followed the United States Supreme Court's unanimous decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), where the Court found that the lower courts have extended the doctrine "far beyond the contours" of the original Supreme Court decisions. *Exxon*, at 283. The *Exxon* Court "held that the *Rooker-Feldman* doctrine applied only to 'cases brought by state-court losers complaining of injuries caused by state-court judgment rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' *Id*. at 1521-22.". *Todd, supra* at 436. *See also, Todd, supra*, at 437 (*Rooker-Feldman* doctrine does not preclude jurisdiction over claim against collection attorneys who falsely misrepresented state of debtors' non-exempt assets in affidavits in support of garnishments); *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 2005 Fed. Appx. 1006N (6th Cir. 2005) ("The *Rooker-Feldman* doctrine does not preclude federal courts from reviewing claims alleging that the state court judgment was procured by fraud, deception, accident or mistake"); *Hageman v. Barton*, 817 F.3d 611 (8th Cir. 2016) (*Rooker-Feldman* did not bar federal court's jurisdiction over FDCPA claims related to collection attorney's actions in the process of obtaining a default judgment on the underlying debt or a subsequent garnishment order where Plaintiff does not seek relief from the judgment or the order themselves); *Satre v. Wells Fargo Bank*, 507 Fed. Appx. 655 (9th Cir. 2013) (District court had jurisdiction regardless of the *Rooker-Feldman* doctrine where plaintiffs alleged in their FDCPA complaint illegal acts and omissions by debt collectors and not an error by state court); *Elyazidi v. SunTrust Bank*, 780 F.3d 227 (4th Cir. 2015) (*Rooker-Feldman* doctrine did not bar court from hearing FDCPA claims about debt collector's pre-judgment representations regarding the amount that may be recovered in attorney fees, as the

7

FDCPA claim did not pose a challenge to state court's judgment). *See also Idell v. Velocity Investments, LLC, et al.*, Case No. 2:16-cv-268, Doc. 25, Page ID # 212-216 (E.D. Tenn., Nov. 15, 2017).

Plaintiffs' FDCPA claims for violations by the FDCPA Defendants for: (1) false representation of the character or legal status of the debt **[See Doc. 11, Page ID # 123-124, ¶ 58]**, (2) attempting to collect a debt from Mrs. Brooks that she did not owe **[See Doc. 11, Page ID # 124-125, ¶ 59]**, and (3) attempting to collect amounts for interest and collection fees from Mrs. Brooks without a signed contract **[See Doc. 11, Page ID # 125-126, ¶¶ 60-62]** are not precluded by the *Rooker-Feldman* doctrine when the Plaintiffs have not complained they were injured by entry of the state court judgment or that the state court judgment should be set aside due to the Defendants' collection actions. **See Doc. 11.** As in *Todd, supra*, the Plaintiffs are not complaining of injuries caused by the state court judgment in making their FDCPA claims. Instead, Plaintiffs filed independent federal claims and specifically pled in ¶ 2. B. of the Complaint that: "This action arises out of: B. Defendants Greeneville Collection Service, Inc. (Greeneville Collection), Chesnut Law Office, LLP (Chesnut Law), and Alex A. Chesnut (Alex Chesnut) (collectively "FDCPA Defendants") violations of the FDCPA". The Plaintiffs have made plausible claims for these FDCPA violations and the Defendants request for dismissal of these claims based on the *Rooker-Feldman* doctrine should be denied.

## F.    NON ROOKER-FELDMAN.

The Defendants' additional argument regarding FDCPA claims made by the Plaintiffs for the FDCPA violations is that they are not precluded by the *Rooker-Feldman* doctrine, but they should be dismissed anyway.

### 1.    Civil summons in General Sessions Court is not a "formal pleading" and is an "initial communication.

8

Many judges in the Eastern District have dealt with the issue of whether a civil summons (warrant) filed in General Sessions Court is a formal pleading, with differing results. The Honorable Curtis L. Collier, Senior District Judge, and the Honorable Harry S. Mattice, Jr., District Judge, whom addressed this issue in *Murr v. Tarpon Fin. Corp.,* 2014 U.S. Dist. LEXIS 16047 (E.D. Tenn., Feb. 10, 2014), and in *Collins v. Portfolio Recovery Assocs., LLC*, 2013 U.S. Dist. LEXIS 162624 (E.D. Tenn. 2013), respectively, both relied on Tennessee state court cases "indicating that a civil warrant is simply not a 'formal' pleading under Tennessee law." *Murr, supra,* at * 35. Judge Collier further found that because a civil summons (warrant) can be "informal" and that parties appealing general sessions judgments to the Circuit Court are not required to file formal pleadings, "civil warrants are pleadings, but they may not be *formal* pleadings." *Id. at *35.*[1]

The holdings in *Murr* and *Collins* that a civil summons (warrant) is not a formal pleading are validated by the long held position by Tennessee Courts that have interpreted statutes applicable to General Sessions Courts that these courts always have been and are still recognized as informal courts. The Tennessee Court of Appeals, held in *Weaver v. Cromer*, 392 S.W. 2d 835, 836 (Tenn. App. 1965) that:

> It must be remembered that this suit was commenced in General Sessions Court and that this Court is a successor to the Justice of the Peace Court in this State and, therefore, substantially the same rules of procedure in civil cases that applied in Justice of the Peace Courts also apply in General Sessions Court. The Justice of the Peace Court was created for the purpose of giving persons having litigation within certain limits an opportunity to bring such litigation to trial without all the formalities that are attendant upon proceedings in Circuit and Chancery Courts and in order to preserve this

---

[1]*Contra, Lilly v. RAB Performance Recoveries, LLC, et al.*, 2:12-CV-364, 2013 WL 3834008, 2013 U.S. Dist. LEXIS 102476 (E.D. Tenn., July 23, 2013, Chief Judge Varlan); *McGhee v. Buffaloe & Assocs., PLC*, 2014 U.S. Dist. LEXIS 45087 (E.D. Tenn., April 2, 2014, Senior District Judge Greer); *Farmer v. Riverwalk Holdings, Ltd.*, 2014 WL 1745433, 2014 U.S. Dist. LEXIS 60513 (E.D. Tenn., May 1, 2014, District Judge Reeves).

informality on appeal, Code Section 19-425[2] was enacted which provides as follows:

> No civil case, originating before a justice of the peace and carried to a higher court, shall be dismissed by such court for any informality whatever, but shall be tried on its merits; and the court shall allow all amendments in the form of action, the parties thereto, or the statement of the cause of action, necessary to reach the merits, upon such terms as may be deemed just and proper; and the trial shall be de novo.'

> Thus, it will be seen that the Legislature intended to preserve the informalities of the Justice of the Peace Court and the General Sessions Court so that cases may be tried upon their merits without regard to any formality except that which is absolutely essential."

In reaching its decision, the *Weaver* Court relied on the Tennessee Supreme Court decision in *Wood v. Hancock*, 23 Tenn. 465, 1844 Tenn. Lexis 138 (Tenn. 1844). An older case that the *Weaver* Court states "has not been overruled", and in which it was held that:

> In proceedings before justices of the peace the strictness in pleading, which is required in courts of record, has never been enforced. All that we can expect or demand from these domestic tribunals is such reasonable precision and certainty in their proceedings as may be necessary for the attainment of justice.

> It has often been held by this court that it is not necessary that the warrant should set out the cause of action with that particularity and precision which are required in a declaration in a court of record. Some general statement indicating the grounds of the action, so that the defendant may not be mislaid in preparing his defense, is all that is necessary. The warrant does not stand in lieu of a declaration. It is simply a summons to the defendants to appear and answer. The pleadings are *ore tenus*.[3] And that which in a court of record may be done by proper pleading and proof may, as a general rule, be done before a justice of the peace by the production of the proof alone.'"

---

[2]"Section 19-425 is now codified at Tennessee Code Annotated section 16-15-729. It contains nearly identical language, but the phrase 'justice of the peace' has now been replaced with 'general sessions court'". *Nicholson, supra*, at fn 1.

[3]*Ore Tenus* is Latin for "by word of mouth". http://thelawdictionary.org/ore-tenus/

*Weaver*, at 836-37.  The Tennessee Supreme Court followed up on the issue of informality in General Sessions Courts in *Vinson v. Mills*, 530 S.W. 2d 761 (Tenn. 1975), and also relied on the statutory language in holding that:

> T.C.A. § 19-425[4], which applies to general sessions courts as well as to justice of the peace courts, is still in force and effect, and it provides:
>
>> No civil case, originating before a justice of the peace and carried to a higher court, shall be dismissed by such court for any informality whatever, but shall be tried on its merits; and the court shall allow all amendments in the form of action, the parties thereto, or the statement of the cause of action, necessary to reach the merits, upon such terms as may be deemed just and proper; and the trial shall be de novo.'
>
> While we are in agreement with the Court of Appeals that written pleadings are more desirable than oral ones, the practice prior to the adoption of the Tennessee Rules of Civil Procedure was to have oral pleadings in the circuit court, upon appeal there from the general sessions court, unless, of course, either party relied upon a claim or defense which was required to be under oath or otherwise in written form."

*Id.* at 765;  Also, see, *Ware v. Meharry Medical College*, 898 S.W. 2d 181, 185 (Tenn. 1995) ("Even though the Tennessee Rules of Civil Procedure apply to general sessions cases appealed to the circuit court, the parties are not required to file formal pleadings"); *Emrick v. Moseley*, 2014 Tenn. App. LEXIS 448, 2014 WL 3778567 (Tenn. App. 2014) (We do generally note, however, that when a case is appealed from general sessions court to circuit court, the parties are not required to file formal pleadings, issue new process, or reconstruct any procedural steps that have been completed prior to the appeal to circuit court. See Tenn. Code Ann. § 16-15-729 (2009); *Vinson v. Mills*, 530 S.W.2d 761, 765 (Tenn. 1975)).  "At least one author has reached the same conclusion. See 1 Pivnick, *Tenn. Cir. Ct. Prac*. § 3:11 (2010 ed.) (on appeal from

---

[4]See footnote 2 above.

general sessions to circuit court, formal pleadings are not necessary 'unless expressly ordered by the circuit court'). *Nicholson, supra*, at fn 3.

The Court in *Murr* summarized the formal pleading issue as follows:

> Although Defendants are correct that a civil warrant is a pleading, it is not considered by Tennessee courts to be a formal pleading. In fact, this informality is one of the benefits of General Sessions court. Although one might impute a broader intent to the 'formal pleading' exception in the FDCPA, Congress apparently sought to limit the scope of the exception to those pleadings that are 'formal.' Had Congress intended to exempt all pleadings it could have done so easily by not modifying the term pleading. *See, Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231 (4th Cir. 2007) ('If W & A were correct that conduct in the course of litigation, or even formal pleadings more specifically, were entirely exempt from the FDCPA, § 1692e(11)'s express exemption of formal pleadings would be unnecessary.'). 'The amendment [adding the formal pleadings exception] by its terms in fact suggests that all litigation activities, including formal pleadings, are subject to the FDCPA, except to the limited extent that Congress exempted formal pleadings from the particular requirements of § 1692e(11).'" *Id.*

*Murr*, at *38. It seems Congress could well have not required additional disclosures following formal pleadings on the grounds that formal pleadings by definition have sufficient information regarding the debt that additional communication from the collector would not be necessary. On the other hand, an informal pleading would usually involve limited information concerning the creditor, debt collector and debt so that requiring follow–up communication would be appropriate and consistent with the broad remedial framework of the FDCPA. The consistent and long held opinions by Tennessee state courts that General Sessions Courts are informal courts and that when parties appeal from General Sessions to Circuit Court formal pleadings are not necessary or required would strongly imply that none of the civil summons or other documents filed in General Sessions are formal pleadings. Although a civil summons may serve the same purpose in a General Sessions Court as a complaint does in the Circuit and Chancery Courts, this does not make it subject to the formal pleading requirements of these courts of record.

12

This explanation is supportive in deeming Plaintiffs' claims under §§ 1692g(a)(3)-(5) as plausible. There is no evidence before the Court that the Chesnut Defendants sent any communications to the Plaintiffs prior to filing the state collection lawsuit. The civil summons is the initial communication in connection with collection of the debt from the Chesnut Defendants that did not fit into the formal exception pleading stated in 15 U.S.C. § 1692g(d). There is also no evidence before the Court that the Plaintiffs paid the debt within five (5) days after the initial communication from the Chesnut Defendants in connection with collection of the debt in the form of the civil summons or that the Chesnut Defendants timely sent the Plaintiffs the written notices required by 15 U.S.C. § 1692g(a)(3)-(5). Plaintiffs have made plausible claims for the Chesnut Defendants' and 1692g(a)(3)-(5) violations and the Defendants' Motion should be dismissed as to these claims.

### 2. False representation or implication that communication is from an attorney.

Contrary to the Defendants' numerous contentions that the Plaintiffs have not alleged that Greeneville Collection was involved in the filing of the collection lawsuit against the Plaintiffs **[See Doc. 27, Page ID # 252]**, the Plaintiffs repeatedly did so. **See Doc. 11, Page ID # 115, ¶ 17; Page ID # 115-116, ¶¶ 20, 23; Page ID # 116-18, ¶¶ 25-28, 31-33.** Greeneville Collection "drafted and prepared" the sworn affidavit for the collection lawsuit and presented it to Laughlin **[See Doc. 11, Page ID # 116-117, ¶ 25]**. The sworn affidavit prepared by Greeneville Collection stated, among other things, that: (1) the DEBTOR(S) were both Mr. Brooks and Mrs. Brooks (and contained Greeneville Collection's account number), and (2) that Laughlin gave authorization for Alex Chesnut to represent them in the collection lawsuit . **See Doc. 11-1, Page ID # 134.** Greeneville Collection also hired a process server to attempt proper service on both Plaintiffs for the collection lawsuit filed in Greene County **[See Doc. 11, Page ID # 117, ¶ 26; Doc. 11-1, Page ID # 133]**, when Mrs. Brooks had not signed a contract for the medical services

13

provided to Mr. Brooks and she did not live in Greene County.  **See Doc. 11, Page ID # 126, ¶¶ 63-66.**  The Plaintiffs have definitely alleged that Greeneville Collection was involved in the filing of the collection lawsuit against the Plaintiffs.  Greeneville Collection does not have to be a party to the collection lawsuit or the law firm representing Laughlin to be involved in the filing of the collection lawsuit.

Very little discovery has taken place in this action – Plaintiffs have served all Defendants with written discovery, but no responses have been provided and no depositions have taken place – no evidence is available regarding how much involvement the Chesnut Defendants had in the communications in the form of the civil summons and the sworn affidavit.  If the Chesnut Defendants did not have any direct personal involvement in the drafting and preparing of the sworn affidavit because they did not review any of the facts of Laughlin's claims against the Plaintiffs in order to make determination if, or when, or where, a collection lawsuit should be filed against the Plaintiffs because none of the documents that supported the claims were in the possession of any of the FDCPA Defendants, then there clearly was a false representation or implication that the communication in the form of the sworn affidavit was from an attorney. Without the Chesnut Defendants direct personal involvement, listing Alex Chesnut as Laughlin's attorney, falsely represents or implies to the least sophisticated consumer that the Chesnut Defendants were professionally involved in Plaintiffs' file before the collection lawsuit was filed and is sufficient to give the least sophisticated consumer the false impression that these communications were from an attorney who had made a meaningful review of the facts alleged in the collection lawsuit prior to it being filed, in violation of 15 U.S.C. § 1692e(3), and in violation of § 1692e(10), because it is the use of any false representation or deceptive means to collect or attempt to collect any debt.  By only possessing the limited information on a sworn affidavit prior to filing a collection lawsuit, upon being made aware of the collection lawsuit being filed against him

14

or her, the least sophisticated consumer may reasonably believe that an attorney has reviewed or

evaluated his or her account and concluded that he or she is obligated to pay when, in fact, that did

not happen.  As stated in *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433(6th

Cir. 2008), at 441:

> Margelefsky argues that because no court has applied the 'more than
> one reasonable interpretation' standard to claimed violations of §
> 1692e(3), the standard is somehow inapplicable as a matter of law.
> But there is nothing in *Clomon* [988 F.2d 1314 (2d Cir. 1993] or in
> any of the cases that have applied the standard to suggest that it is not
> equally applicable to subsection three of § 1692e. In fact, § 1692e
> prohibits debt from using 'any false, deceptive, or misleading
> representation or means in connection with the collection of any
> debt,' and lays out specific violations of the section, including
> subsection three, related to attorney communications.

As Judge Greer found in *Dickerson v. CBET, Inc., et al.*, 2:14-cv-174, Doc. 85 (E.D.

Tenn., Mar 14, 2016) (citing to *Kistner, supra*), by falsely representing or implying in the

communications in the form of the summons and affidavit that the communication is from an

attorney, when it is not, "may lead the least sophisticated consumer to 'reasonably believe that an

attorney has reviewed his or her file and has determined that he or she is a candidate for legal

action' . . . and [t]here exists a genuine issue of material fact as to whether including the name of an

attorney on a civil warrant where the attorney had merely reviewed the affidavit of sworn account,

but no other underlying documents or files, may lead the least sophisticated consumer to believe

that an attorney has deemed her file ripe for legal action. Summary judgment is denied as to both the

plaintiff and the defendant on the FDCPA violation of § 1692e(3) relating to the use of Carroll's

name on the civil warrant."  *See Dickerson, supra*, Doc. 85, Page ID # 743-744.

Plaintiffs have made plausible claims that the FDCPA Defendants violated 15 U.S.C. §

1692e and 1692e(3).  The Defendants' Motion should be dismissed as to these claims.

**3.      The collection lawsuit was filed against Mrs. Brooks in an improper venue.**

15

Any debt collector who brings any legal action on a debt against any consumer shall, in the case of an action that is not an action to enforce an interest in real property, bring such action only in the judicial district in which such consumer signed the contract sued upon or in which such consumer resides at the commencement of the action. **15 U.S.C. § 1692i(a)(2).** Also, see *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 105 (6th Cir. 1996); *White v. Sherman Fin. Group, LLC*, 984 F. Supp. 2d 841, 854 (E.D. Tenn. 2013).

"Further, 'the venue provision was an "attempt to minimize the perceived imbalance of power between debtors and creditors by requiring venue for consumer debt actions in a locale convenient to the debtor."' *Zartman v. Shapiro & Meinhold*, 811 *P.*2d 409, 412 (Colo.Ct.App.1990), *aff'd*, 823 *P.*2d 120 (Colo. 1992) (quoting Sweig, *Guidelines for Consumer Debt Collection by Attorneys Under the 1986 Amendment to the Fair Debt Collection Practices Act*, 21 *New Eng. L. Rev.* 697, 705 (1986))." *Id*. "The Act is to be construed in accord with its purpose to prevent litigation abuse and to maximize the consumers' opportunity to respond to debt-collection litigation." *Id.* at 1020. Congress has mandated that consumer debtors will be provided protection from being required to travel to another judicial district, in this case a county, to defend against collection litigation, whether that county is next door or half a state away. This language in the FDCPA is there to provide protection to consumers from debt collectors who engage in what Congress has perceived to be litigation abuse.

As stated above and alleged in the Plaintiffs' First Amended Complaint, Greeneville Collection was involved in the filing of the collection lawsuit in Greene County against Mrs. Brooks when she had not signed a contract for the alleged debt and did not live in Greene County when the collection lawsuit was filed. Plaintiffs have made plausible claims that the FDCPA Defendants violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692i(a)(2). The Defendants' Motion should be dismissed as to these claims.

16

## III.    ECOA AND REGULATION B ANALYSIS.

"Congress enacted ECOA in 1974 'to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit.' *Mays v. Buckeye Rural Elec. Coop.*, 277 F.3d 873, 876 (6th Cir. 2002) (quotation marks omitted).  In Congress' judgment, one's marital status—along with race, religion, and other traits, which were added to the statute in 1976—generally "are, and must be, irrelevant to a credit judgment." S. Rep. No. 94-589, at 3 (1976), reprinted in 1976 U.S.C.C.A.N. 403, 405; *see also Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998).  ECOA thus makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction [] on the basis of . . . sex or marital status," among other things. 15 U.S.C. § 1691(a)."  *RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 383 (6th Cir. 2014). "Congress mandated that the agency charged with overseeing ECOA— first the Federal Reserve, now the Consumer Financial Protection Bureau—promulgate regulations 'to carry out the [statute's] purposes.' 15 U.S.C. § 1691b(a). Regulation B is the result of Congress' directive. Like ECOA, Regulation B aims 'to promote the availability of credit to all creditworthy applicants without regard to . . . sex [or] marital status [and other factors] . . . [and] prohibits creditor practices that discriminate on the basis of any of these factors.' 12 C.F.R. § 202.1(b), 12 C.F.R. § 1002.1(b)." *Id.*

### A.    PLAINTIFFS' ECOA ARGUMENT.

Plaintiffs have sued the Defendants because they have attempted to collect a debt by suing the spouse of a patient for a debt extended to the patient on credit.  Defendants have moved to dismiss the claims asserted for violations of the Equal Credit Opportunity Act, 15 U.S.C.A. §1691, et seq. (ECOA)(Counts I and II).  **See Doc. 27, Page ID # 255-266.**  Plaintiffs contend

that the Defendants have violated ECOA by employing a policy of discrimination based on marital status. The Defendants pursue spouses for credit extended on an individual basis.

Under the ECOA:

> The general rule stated in § 202.4(a) [and § 1002.4(a)] covers all dealings, without exception, between an applicant and a creditor, whether or not addressed by other provisions of the regulation. Other provisions of the regulation identify specific practices that the Board [Bureau] has decided are impermissible because they could result in credit discrimination on a basis prohibited by the Act. The general rule covers, for example, application procedures, criteria used to evaluate creditworthiness, administration of accounts, **and treatment of delinquent or slow accounts**. Thus, whether or not specifically prohibited elsewhere in the regulation, a credit practice that treats applicants differently on a prohibited basis violates the law because it violates the general rule. Disparate treatment on a prohibited basis is illegal whether or not it results from a conscious intent to discriminate.

See 12 C.F.R. Part 202 Supplement I, § 202.4(a); Part 202 Supplement I, § 1002.4(a). (emphasis added). Defendants "credit practice that treats applicants differently on a prohibited basis violates the law." *Id.* The Act is wide in latitude, prohibiting discrimination against an applicant in "**any aspect of a credit transaction**". 12 C.F.R. § 202.4(a); 12 C.F.R. § 1002.4(a) (emphasis added). The term credit transaction has been interpreted by the FTC [CFPB] to include "information requirements; investigation procedures; standards of creditworthiness; terms of credit; furnishing of credit information; revocation, alteration, or termination of credit; and **collection procedures**". See 12 C.F.R. § 202.2(m); § 1002.2(m) (emphasis added). Under the expansive interpretation of ECOA, creditors are prohibited from discriminating against applicants in the way they enforce and collect outstanding credit.

Defendants treat applicants differently based on their marital status. Where the applicant is married, the Defendants sue the applicant and the applicant's spouse though there is no contractual right to pursue the applicant's spouse. Defendants only sue the applicant's spouse where the applicant is married. Defendants will not sue an applicant's partner when they are

18

unmarried, when they are in a civil union, or when they are in a domestic partnership. Defendants only sue the non-contractually obligated spouse if the applicant is married. This is a credit practice that treats applicants differently on a prohibited basis – marital status. This practice violates the general rule behind the ECOA and therefore is unlawful. *Id*.

Defendants openly admit that they pursue spouses of patients for the patient's medical debt relying on a Tennessee statute that says spouses can be held liable for necessaries incurred by a spouse. **See Defendants' Memorandum, Doc. 27, Page ID # 259-261.** The Tennessee law that permits treating persons differently because they are married is discriminatory on its face because it relies on the person's marital status. As a state law, it is preempted by the ECOA. The state law does not allow the Defendants to engage in discrimination based on marital status that is prohibited by ECOA.

Defendants also erroneously contend that the Plaintiffs' must show a credit denial in connection with their claims that the Defendants' practices violate the ECOA. **See Defendants' Memorandum, Doc. 27, Page ID # 264-266.** A credit denial is not required for all claims under the ECOA.

Defendants also incorrectly assert that the Plaintiffs' fail to plead any "adverse action." **See Defendants' Memorandum, Doc. 27, Page ID # 257-259.** The Plaintiffs have adequately alleged that they have suffered an adverse action. The only credit sought by Mr. Brooks was individual credit. Yet, the Defendants sought to include his spouse in that credit extension. The collection lawsuit is not the adverse action claimed by the Plaintiffs, but it is proof that the Defendants did not extend the individual credit sought by Mr. Brooks. This was substantial change in the terms of the credit and as such is an adverse action. Defendants motion to dismiss regarding the Plaintiffs' ECOA claims should be denied.

## 1. NOT ALL ECOA CLAIMS REQUIRE THE DENIAL OF CREDIT.

The Equal Credit Opportunity Act has several purposes. The purposes include:

> The purpose of this regulation is to promote the availability of credit to all creditworthy applicants without regard to race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to contract); to the fact that all or part of the applicant's income derives from a public assistance program; or to the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The regulation prohibits creditor practices that discriminate on the basis of any of these factors. The regulation also requires creditors to notify applicants of action taken on their applications; to report credit history in the names of both spouses on an account; to retain records of credit applications; to collect information about the applicant's race and other personal characteristics in applications for certain dwelling-related loans; and to provide applicants with copies of appraisal reports used in connection with credit transactions.

**12 C.F.R. § 202.1; § 1002.1 Authority, scope and purpose.**

Defendants have asserted that the Plaintiffs cannot assert any claims against them because they were not denied credit. **See Defendants' Memorandum, Doc. 27, Page ID # 264-266.** It is true that one purpose of the law is to promote the availability of credit and a denial of credit for a discriminatory reason is necessary for a claim made on that basis. But the Defendants' sweeping contention that all ECOA claims require a denial is "dead wrong", because the ECOA clearly does "not require a denial of credit." *Martinez v. Freedom Mortg. Team, Inc.*, 527 F.Supp.2d 827, 833–34 (N.D. Ill., 2007).

In *Martinez*, the Defendants asserted "that Martinez' claims of discrimination in violation of the …Equal Credit Opportunity Act ("Credit Opportunity Act," 15 U.S.C. § 1691) fail because denial of credit is a required component of a successful claim of discriminatory treatment under both of those sections.  Martinez has not asserted a denial of credit, complaining instead of burdens associated with his receiving credit." The *Martinez* Court pointed out "that contention by Freedom and Encore is dead wrong because both statutes clearly do not require a denial of credit." *Id.*

As the above statement of the purposes shows, the ECOA also prohibits practices that discriminate on the basis of any of the identified factors. A claim for discrimination based on prohibited practices does not require a denial of credit. If it did, there would never be a case based on discriminatory lender practices when credit is granted because no denial would be involved. But there are numerous cases that have been filed based on discriminatory practices without a denial. See e.g., *Coleman v. General Motors Acceptance Corp*., 220 F.R.D. 64, 67 (M.D. Tenn., 2004) ("Plaintiffs seek to bring this suit on behalf of themselves and "all black consumers who obtained financing from GMAC in the United States pursuant to GMAC's 'Retail Plan—Without Recourse'1 between May 10, 1989 and the date of judgment."); *Osborne v. Bank of America, Nat. Ass'n*, 234 F.Supp.2d 804, 806 (M.D. Tenn., 2002). And the case repeatedly cited by the Defendants in their memorandum, *RL BB Acquisition, LLC v. Bridgemill Commons Development Group, LLC*, 754 F.3d 380, 382 (6th Cir., 2014) involved an ECOA claim in regards to credit extended, not denied. The ECOA claims in *RL BB* were for violations which were based on the lender's discriminatory practices of seeking to hold a spouse liable for a spouse's debts. The same claims before this court.

Since the ECOA prohibits discriminatory practices, the issue before this court is whether the Defendants have engaged in discriminatory practices prohibited by the ECOA, i.e., by a suing a non-liable spouse for no other reason than the applicant for credit is married.

Defendants say that they did not discriminate because (i) the law allows them to ask about marital status under 15 U.S.C. §1691(b)(1) which they interpret as a green light to suing a non-liable spouse and (ii) they are proceeding under a Tennessee law that allows them to sue the spouse for their spouse's medical debt as a necessary expense.

As to the first point, it takes a quantum leap of logic to say that allowing a limited inquiry into marital status "if such inquiry is for the purpose of ascertaining the creditor's rights and

remedies applicable to the particular extension of credit" equates to granting the right to sue a non-liable spouse. Furthermore, such an interpretation violates one of the ECOA's prohibited practices. To curb marital discrimination and ensure qualified applicants can obtain credit in their own names, creditors cannot require the signature of the applicant's spouse on a credit application, even if it's incidental credit. See 12 C.F.R. § 202.7(d); § 1002.7(d). If the ECOA granted creditors the right to pursue non-liable spouses, the signature prohibition becomes pointless as the spouse is automatically liable. Respectfully, Defendants' interpretation is wrong.

The inquiry into marital status as it relates to a creditor's rights or remedies does not address who may be held liable for a debt but allows inquiry because marital status may affect what property may be available to collect from. For instance, under Tennessee law, married couples may hold property as tenants by the entireties. Once the property is held as tenants by the entireties, neither spouse may assign away their respective interest in the property unilaterally because they each own the whole property. *In Re Estate of Fletcher*, 538 S.W.3d 444, 448 (Tenn. 2017). This view of the provision is confirmed by the Official Staff Interpretation, Supplement I to Part 202, § 202.6 (b)(8); Supplement I to Part 1002, § 1002.6 (b)(8). ("For example, in a secured transaction involving real property, a creditor could take into account whether state law gives the applicant's spouse an interest in the property being offered as collateral.").

In fact, if the Defendants were correct that this provision gives them the right to sue both spouses, there would be no need to inquire into the marital status for the creditor's rights and remedies because if both spouses were liable on any debt then any property held by either, individually or jointly, would be available to satisfy any claim of the creditor.

Defendants' second argument fares no better. The reliance on the Tennessee law as a defense to a federal claim does not get the Defendants very far as the Supremacy Clause of the

22

United States Constitution trumps contrary state law. Regulation B, which applies ECOA, 12

C.F.R. § 202.11; § 1002.11, addresses the effect of the ECOA on state laws:

> **(a) Inconsistent state laws.** Except as otherwise provided in this section, this regulation alters, affects, or preempts only those state laws that are inconsistent with the Act and this regulation and then only to the extent of the inconsistency. A state law is not inconsistent if it is more protective of an applicant.

> **(b) Preempted provisions of state law.**

> (1) A state law is deemed to be inconsistent with the requirements of the Act and this regulation and less protective of an applicant within the meaning of section 705(f) of the Act to the extent that the law:

>> (i) Requires or permits a practice or act prohibited by the Act or this regulation;

To the extent that Defendants claim a right to sue a non-liable spouse because there is a

Tennessee law that allows it, the law is preempted since it "permits a practice or act prohibited

by the Act or this regulation." *Id.* The ECOA is straight forward - you cannot discriminate based

on marital status. Allowing a creditor to sue an otherwise non-liable party solely because they are

a spouse is discrimination based on marital status. *See Silverman v. Eastrich Multiple Investor*

*Fund, L.P.*, 51 F.3d 28, 33 (3rd Cir., 1995) ("an offending creditor should not be permitted to

look for payment to parties who, but for the ECOA violation, would not have incurred personal

liability on the underlying debt in the first instance"); *PNC Bank, Nat. Ass'n v. Miller*, 2013 WL

2455972, at *1 (M.D. Fla., 2013); *Wells Fargo, N.A. v. Triplett*, 2013 WL 5217847, at *4

(E.D.N.C., 2013); *Sony Electronics, Inc. v. Putnam*, 906 F.Supp. 228, 229 (D. N.J., 1995).

Defendants also misinterpret the effect of the provision that addresses when a spouse

signs a guarantee. A creditor who has a signed guarantee has an easier path to enforcing a claim

against the spouse. The provision extends the antidiscrimination based on marital status even

when there is a written agreement. The lack of a written signature does not somehow allow the

creditor to discriminate and hold a spouse liable. That is what the creditor has tried to do here.

They have sued claiming a spouse is liable when there is no written agreement from the spouse. Plaintiffs are suing because the Defendants' discrimination can be shown without a signed guarantee. Defendants practices of trying to hold a spouse, who is a stranger to the transaction, liable is discrimination based on marital status.

### 2.    PLAINTIFFS HAVE ALLEGED AN ADVERSE ACTION.

An "adverse action" under the ECOA is defined at 15 U.S.C. § 1691(d):

> **(6)** For purposes of this subsection, the term "adverse action" means a denial or revocation of credit, a change in the terms of an existing credit arrangement, **or a refusal to grant credit** in substantially the amount or **on substantially the terms requested.** Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

(emphasis added)

In the Plaintiffs' First Amended Complaint, the Plaintiffs have alleged that Mr. Brooks qualified for the extension of credit based on his own creditworthiness. **See Doc. 11, Page ID # 119, ¶ 37.** Any credit requested by Mr. Brooks was for himself individually. That was a term of the credit requested. *See Cross v. Prospect Mortg., LLC*, 986 F.Supp.2d 688, 694 (E.D. Va., 2013) ("Simply put, anything that materially affects the lender or borrower's decision to enter into a particular loan agreement is a term of that loan.") When the Defendants sought to enforce the credit extended to him against his spouse, they made known that he was not granted credit substantially on the terms requested. As a result, it was an adverse action under the ECOA.

Defendants also never provided Mr. Brooks any notice of this adverse action by the Defendants as required. **See 15 U.S.C. § 1691(d)(1).** ("Reason for adverse action; procedure applicable; "adverse action" defined (1) Within thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the

24

application."). Defendants argue that the Plaintiffs are pointing to the collection lawsuit as an adverse action. Defendants are wrong. Plaintiffs point to the collection lawsuit as proof that the Defendants have wrongfully discriminated by trying to collect from the non-liable spouse who was a stranger to the transaction – an unfavorable change in the terms of the account. See 12 C.F.R. § 202.2(c)(1)(ii); 12 C.F.R. § 1002.2(c)(1)(ii). By doing so, the Defendants did not provide credit on substantially the same terms sought. See 12 C.F.R. § 202.2(c)(1)(i); 12 C.F.R. § 1002.2(c)(1)(i). The inclusion of the non-liable spouse as a defendant in the collection action substantially changed the terms of the credit extended.

Defendants cite the decision in *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 406–07 (6th Cir., 1998) as support that a collection action cannot be the basis of an adverse action. In *Lewis*, Lewis claimed that he was being retaliated against for raising claims under the ECOA. Lewis pointed to a collection lawsuit filed against him for a debt that he did not dispute as proof of the discrimination. The *Lewis* Court found that the collection action was "nothing more than a creditor taking a necessary action to recover thousands of dollars in undisputed debt that the consumer refuses to honor. Amex is certainly entitled to sue Lewis under such a circumstance, and Lewis's attempt to argue otherwise amounts to nothing more than bare legal conclusions and unwarranted factual inferences." *Id.*

The collection lawsuit here differs than the suit in *Lewis*. The claim against Mrs. Brooks is a disputed debt as the basis for the suit against her is solely her status as Mr. Brooks' spouse. As discussed above, the Tennessee law, to the extent it permits claims against persons based on their marital status is preempted by the ECOA. When a suit is filed against a non-liable spouse based on nothing more than marital status, that shows an adverse action against the spouse who only sought individual credit.

## **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendants' Motion under Rule 12(c) in its entirety and Plaintiffs should be allowed to proceed to discovery and a full and complete trial on the merits.

02/19/19                                    Respectfully submitted,

                                            **MICHAEL BROOKS**
                                            **KASEY BROOKS**


                                            s/_____Alan C. Lee_____
                                            Alan C. Lee, BPR # 012700
                                            P. O. Box 1357
                                            Talbott, TN 37877-1357
                                            (423) 581-0924
                                            aleeattorney@gmail.com

                                            Attorney for Plaintiffs


## **CERTIFICATE OF SERVICE**

I hereby certify this 19th day of February 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.


                                            s/___Alan C. Lee_____
                                            Alan C. Lee, Attorney for Plaintiffs