UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

MICHAEL BROOKS and KASEY BROOKS, )
                                   )
    *Plaintiffs*,                  )
                                   )      Case No. 2:18-cv-146
v.                                 )
                                   )      Judge Mattice
LAUGHLIN MEMORIAL HOSPITAL INC., ) Magistrate Judge Wyrick
GREENEVILLE COLLECTION SERVICE     )
INC., CHESNUT LAW OFFICE LLP, and  )
ALEX A. CHESNUT,                   )
                                   )
    *Defendants*.                  )

## ORDER

Before the Court are motions for summary judgment by all remaining parties: Greeneville Collection Service, Inc. (Doc. 69), Chesnut Law Office, LLP, and Alex Chesnut (Doc. 73), and Plaintiffs Michael Brooks and Kasey Brooks (Doc. 75). Also before the Court are two substantially identical Motions for Judgment on the Pleadings by Chesnut Law Office, LLP, and Alex Chesnut (Docs. 65 & 71). For the reasons set forth herein, Plaintiffs' Motion for Partial Summary Judgment (Doc. 75) will be **GRANTED IN PART** and **DENIED IN PART**; Greeneville Collection Service, Inc.'s Motion for Summary Judgment (Doc. 69) will be **DENIED**, and Chesnut Law Office, LLP, and Alex Chesnut's Motion for Summary Judgment (Doc. 73) will be **DENIED**. The Motions for Judgment on the Pleadings (Docs. 65 & 71) will likewise be **DENIED**.

## I.    FACTUAL AND PROCEDURAL HISTORY

On or about December 10, 2014, Michael Brooks received medical care from Laughlin Memorial Hospital, Inc. ("Laughlin"). (Doc. 76-1 at ¶¶ 4, 6-7). He was married to Kasey Brooks at the time. (Doc. 70-5 at 12). Apparently, he did not pay the bill for the

services he received. Laughlin referred the account to Greenville Collection Service, Inc. ("Greenville") for collection. (Doc. 70-2 at 7). Greeneville in turn referred the account to Chesnut Law Office, LLP and attorney Alex Chesnut (the "Chesnut Defendants") to file a collection action. (*Id.* at 14). On August 28, 2017, Alex Chesnut filed a Civil Summons and Affidavit of Sworn Account in Greene County General Sessions Court against Michael Brooks and Kasey Brooks, identifying Laughlin as the plaintiff. (Doc. 11-1). This lawsuit arises out of that collection action.

Greeneville is a company that works to collect past-due consumer accounts for various clients, including Laughlin. (Doc. 70-2 at 5). The number of accounts Laughlin refers to Greeneville varies, but the average is around two hundred accounts per month. (*Id.* at 7). Greeneville receives account information from Laughlin via email, which is automatically uploaded or transferred to Greeneville's system. (*Id.*). Once an account is referred, Greeneville sends out an initial collection letter. (Doc. 70-2 at 7). Pursuant to an agreement between Laughlin and Greeneville, if a lawsuit is not filed in connection with an account, 30% of any amount collected goes to Greeneville. (*Id.* at 17). If a lawsuit is filed, 40% of any amount collected goes to Greeneville. (*Id.*). If funds are collected through a lawsuit, they are first applied to the filing and service fees paid by Greeneville. (*Id.*). If Greeneville does not collect anything from the lawsuit, it is not reimbursed for these fees. (*Id.*).

Greeneville refers accounts to Chesnut Law for litigation by sending information sheets it calls Debtor Master Files. (Doc. 70-1 at 6; Doc. 70-2 at 15). Each Debtor Master File is a screenshot of a Greeneville computer. (Doc. 70-2 at 15). A Greeneville program is open on the screen, displaying a summary of the account information generated from information received from Laughlin. (*Id.*). The Debtor Master file for Plaintiffs lists

Michael Brooks as the Debtor and Michael Brooks and Kasey Brooks as Guarantor. (Doc. 70-1 at 64; Doc. 70-2 at 15). The sheet includes the date of service, date the account was placed, balance due, and agency number for Greeneville. (*Id.*). It identifies the client as Laughlin Memorial Hospital. (*Id.*). The boxes for transaction amount, total amount paid, accrued interest, legal expenses, and interest rate are all blank. (*Id.*). Below the screenshot image are three lines of text: the names Michael Gene Brooks and Kasey Brooks, Michael Brooks' social security number, and Michael Brooks' employment. (*Id.*).

According to Greeneville, the Debtor Master File was the only document sent to Chesnut Law prior to the preparation of the Civil Summons and Affidavit. (Doc. 70-2 at 15; Doc. 70-1 at 6). Attorney Chesnut testified his office would have reviewed the Debtor Master File, but could not recall if they reviewed anything else. (Doc. 70-1 at 6, 7). He testified he relies on the address of the patient/spouse at the time the patient received medical service, which he receives from Greeneville. (*Id.* at 8). Chesnut further testified the Debtor Master File does not indicate Michael Brooks and Kasey Brooks were married, but that it "does list Michael Gene and Kasey Brooks which indicates a marriage as guarantor." (*Id.* at 9). Similarly, Greeneville's representative testified Chesnut Law would know the debtors were a married couple because there were two names on the Debtor Master File. (Doc. 70-2 at 16). She testified that Greeneville verifies whether the debtor is married, single, or divorced on the date of medical service. (*Id.*).

Karen Kilday, a secretary at Chesnut Law, prepared the Civil Summons and Affidavit of Sworn Account. (Doc. 70-2 at 7; Doc. 70-1 at 4). Elizabeth Gosnell of Greeneville Collection then took the Affidavit of Sworn Account to Charles Whitfield, the CEO of Laughlin Memorial Hospital. (Doc. 70-1 at 4; Doc. 70-2 at 5, 7). Mr. Whitfield signed the affidavit and Gosnell notarized his signature. (*Id.*). The Affidavit identifies the

3

patient as Michael Brooks and the "Debtor(s)" as Michael Brooks and Kasey Brooks. (*Id.*). The Civil Summons identifies Alex A. Chesnut as attorney for plaintiff Laughlin Memorial Hospital, Inc. (Doc. 11-1). The Summons indicates $2,631.44 is the amount past due and owing on the account, plus court costs of $150 and service of process fees of $52. (*Id.*).

On August 28, 2017, the collection action was filed in Greene County General Sessions Court. (*Id.*). As with all lawsuits they file from Greeneville, the Chesnut Defendants paid the filing fee and service fee, but Greeneville reimbursed them for both the same day. (Doc. 70-2 at 8, 17). Greeneville also paid Chesnut's legal fee for the collection action. (Doc. 70-1 at 7, 10). Chesnut testified that at some point, either he or Chesnut Law had a signed representation agreement with Laughlin Memorial; he could not recall if he had an agreement with Greeneville. (Doc. 70-1 at 7).

On November 16, 2017, default judgment was entered against Plaintiffs in the collection action in the amount of $2,631.44 plus interest. (Doc. 11-1 at 1).

On August 28, 2018, Plaintiffs filed their Complaint (Doc. 1), and on October 11, 2018, they filed an Amended Complaint (Doc. 11) (as amended, the "Complaint"). The Complaint asserts claims for marital status discrimination in violation of the Equal Credit Opportunity Act ("ECOA"), invasion of privacy under Tennessee state law and the Fair Debt Collection Practices Act ("FDCPA"), and the following FDCPA claims:

1.      Failure to send Plaintiffs a notice that contains the disclosures required by 15 U.S.C.A. § 1692g;

2.      False representation of the legal status of the debt in violation of §§ 1692e(2)(A), 1692e(8), 1692e, and 1692e(10);

*3.     Attempting to collect a debt from Mrs. Brooks that she did not owe, in violation of §§ 1692e(2)(A), 1692e(5), 1692e(8), 1692e, 1692e(10), 1692f, 1692f(1), 1692d, and 1692c(b);*

*4.     Claiming interest and collection fees from Mrs. Brooks without a signed contract, in violation of §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(5), 1692e(10), 1692f and 1692f(1);*

5.     Filing the collection lawsuit against Mrs. Brooks in an improper venue, in violation of §§ 1692e, 1692e(10), 1692f, and 1692i(a)(2); and

6.     Falsely representing or implying that a communication is from an attorney, in violation of §§ 1692e(3) and 1692e.

(Doc. 11).

On June 26, 2019, the Court granted in part a Motion for Judgment on the Pleadings (Doc. 26) filed jointly by Laughlin and Greeneville. (Doc. 56). The Court dismissed the third and fourth FDCPA claims, italicized above, for lack of subject matter jurisdiction. (Doc. 56 at 19-21). The Court found consideration of these claims barred by the *Rooker-Feldman* doctrine, because both sought review and rejection of the state court's default judgment. (*Id.*). The Court also dismissed Plaintiffs' ECOA claim, state law invasion of privacy claim, and FDCPA invasion of privacy claim. (*Id.* at 26).

Thereafter, Chesnut Law and Alex Chesnut filed two identical Motions for Judgment on the Pleadings (Docs. 65 & 71). Greeneville Collection filed a Motion for Summary Judgment (Doc. 69), as did the Chesnut Defendants (Doc. 73). Finally, Plaintiffs filed a Motion for Partial Summary Judgment, asking the Court to rule on all claims but reserve the issue of damages (Doc. 75).

## II.    STANDARDS OF REVIEW

In reviewing a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Engler v. Arnold*, 862 F.3d 571, 574-75 (6th Cir. 2017) (internal quotations omitted). The Court reviews a Rule 12(c) motion for judgment on the pleadings using the same standards it applies to a Rule 12(b)(6) motion to dismiss. *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) ("The manner of review under Rule 12(c) is the same as a review under Rule 12(b)(6)." (internal quotation omitted)). "The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

As to the summary judgment motions, Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material fact must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists*. Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56).

## III.    ANALYSIS

Congress passed the Fair Debt Collection Practices Act to eliminate the use of abusive, deceptive, and unfair debt collection practices. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). "The statute is very broad, and was intended to remedy 'what it considered to be a widespread problem.'" *Id.* (*quoting Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)). Whether particular conduct violates the FDCPA is an objective test based on the least sophisticated consumer. *Id.*

To prevail on an FDCPA claim, a plaintiff must establish that (1) he or she is a "consumer" within the meaning of the FDCPA, (2) the "debt" arises out of transactions entered primarily for personal, family, or household purposes, (3) the defendant is a "debt

7

collector" as defined by the FDCPA, and (4) the debt collector violated a provision of the FDCPA in attempting to collect a debt. *White v. Univ. Fidelity, LP*, -- F. App'x --, 2019 WL 5856433, *2 (6th Cir. Nov. 8, 2019); *Clark v. Lender Processing Servs.*, 562 F. App'x 460, 465–66 (6th Cir. 2014) ("To state a claim under the FDCPA, a plaintiff must show that a defendant violated one of the substantive provisions of the FDCPA while engaging in debt collection activity."). "Debt collectors who fail to comply with ... provisions of the Act are subject to civil liability under 15 U.S.C. § 1692k." *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996).

In this case, there is no dispute as to the first three elements: Defendants are "debt collectors," Plaintiffs are "consumers," and the account was a "debt," all within the meaning of the FDCPA. (*See* Doc. 70 at 6). Michael and Kasey Brooks are natural people who were obligated or alleged obligated to pay money arising out of a transaction for personal medical services. *See* 15 U.S.C.A. § 1692a(3), (5). Defendants are likewise debt collectors within the meaning of the FDCPA. Greeneville concedes it is a debt collector for the purpose of its own summary judgment motion, and its representative testified the company's business is to collect debts owed to its clients. (Doc. 70 at 6; Doc. 70-2 at 5). In their answer, the Chesnut Defendants state they are debt collectors. (Doc. 21 at ¶¶ 18-19). Thus, only the violation element of each FDCPA claim is at issue.

Initially, there appears to be some confusion as to the remaining FDCPA claims in this action. Each party seeks judgment as to at least one claim that is not before the Court, either because it was previously dismissed or never asserted in the Complaint.[1] This confusion persists despite the Court's June 26, 2019 Order, which explicitly set forth the

---

[1] Defendants seek dismissal of any claim that they violated the FDCPA by hiring a process server to serve the collection action, yet no such claim appears in the Complaint. (Doc. 70 at 11; Doc. 74 at 7). The "claim" appears to refer to a single factual allegation regarding the hiring of a process server. (Doc. 11 at ¶ 26).

8

remaining claims before the Court: (1) failure to send notice required by 15 U.S.C. § 1692g, asserted against the Chesnut Defendants, (2) false representation of the legal status of the debt, asserted against all Defendants, (3) filing a collection action in an improper venue, asserted against all Defendants, and finally, (4) false representation that a communication is from an attorney, against all Defendants. (Doc. 56 at 27).

### A.    Motions for Judgment on the Pleadings

Without explanation, the Chesnut Defendants filed two identical motions for judgment on the pleadings. (Docs. 65 and 71). These duplicative filings are, in turn, largely line-by-line reproductions of the motion for judgment on the pleadings filed jointly by Greeneville and Laughlin earlier in the case. While certain arguments are omitted and the names changed, the revision does not reflect the Court's ruling on the first joint motion. The Court has already addressed the applicability of the *Rooker-Feldman* doctrine to the three claims identified by the Chesnut Defendants. (Doc. 56 at 17-21). Those subject-matter jurisdiction rulings were not specific to the movant. The Order unequivocally dismissed two of the claims on which the Chesnut Defendants seek judgment and rejected an identical *Rooker-Feldman* challenge to the third. (*Id.*). Similarly, Plaintiffs' invasion of privacy claims were dismissed. (*Id.* at 25-26).

The Chesnut Defendants also argue they are entitled to judgment as to Plaintiffs' § 1692g claim because the collection action did not constitute an initial communication between a debt collector and a consumer. (Doc. 72 at 10). As set forth in detail below, the Court disagrees. Accordingly, the Motions for Judgment on the Pleadings of the Chesnut Defendants will be denied. (Docs. 65 & 71).

### B.    Failure to Send Notice Required by 15 U.S.C. § 1692g

Plaintiffs contend the Chesnut Defendants failed to comply with the notice

requirements of 15 U.S.C. § 1692g. Section 1692g requires that, within 5 days of an initial communication with a consumer in connection with a debt, a debt collector must send certain information to the consumer, unless the initial communication contained the information or the consumer has paid the debt. 15 U.S.C. § 1692g. "[A] formal pleading in a civil action" is not treated as an initial communication, and thus is not subject to the same notice requirements. 15 U.S.C.A. § 1692g(d). Though the Chesnut Defendants did not respond in opposition to Plaintiffs' motion for judgment on this claim, in their motion for judgment on the pleadings, they argue the formal pleading exception applies.[2] (Doc. 72 at 10).

The United States Court of Appeals for the Sixth Circuit has not resolved the issue of whether pleadings in general sessions courts of the State of Tennessee constitute "formal pleadings."[3] Courts within this District have answered the question both ways. *See Dickerson v. CBET, Inc.*, No. 2:14-cv-174, 2016 WL 7799578 (E.D. Tenn. March 14, 2016) (Greer, J.) (collecting cases and discussing disagreement within the district). This Court has previously held that a general sessions court civil warrant and attached materials are not "formal pleadings" exempt from classification as initial communications. *Collins v. Portfolio Recovery Assocs., LLC,* No. 2:12-cv-138, 2013 WL 9805805 (E.D. Tenn. June 7, 2013) (Mattice, J.); *accord Murr v. Tarpon Fin. Corp.*, No. 3:10-cv-372, 2014 WL 546690, *14 (E.D. Tenn. Feb. 10, 2014) (Collier, J.) ("Although... a

---

[2] The response purports to incorporate by reference the arguments made in the Chesnut Defendants' motion for summary judgment. (Doc. 84 at 1). However, the failure to provide the notice required by § 1692g is also not addressed in the summary judgment motion. (*See* Doc. 74).

[3] The Circuit Court has broached the issue at least twice without resolving it. *See Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504 (6th Cir. 2007) (summons and complaint filed in federal court); *Hardin v. Finkelstein, Kern, Steinburg & Cunningham, P.C.*, 707 F. App'x 855 (6th Cir. 2017). In *Hardin*, Chief Judge Reeves of this District had held that pleadings in general sessions court were formal pleadings. On appeal, the Sixth Circuit sidestepped the issue, affirming on an alternate basis. *Hardin*, 707 F. App'x at 857-58.

10

civil warrant is a pleading, it is not considered by Tennessee courts to be a *formal* pleading.").

Upon review, the Court finds no reason to change course from its holding in *Collins*. As Judge Collier observed in *Murr*, "Congress apparently sought to limit the scope of the exception to those pleadings that are 'formal.'" *Murr*, 2014 WL 546960 at *14. Congress could easily have exempted all pleadings just by omitting the word "formal," but it did not. The inclusion of this modifier requires the exclusion of certain pleadings, or is superfluous. The most natural interpretation is that the phrase does not encompass informal pleadings, such as those filed in a general sessions court.

Accordingly, within five days of the initial communication with Plaintiffs in connection with the collection of the debt, the Chesnut Defendants were required to provide Plaintiffs with a written notice containing the following information, unless the debt was paid or the information was contained in the initial communication:

**(1)** the amount of the debt;

**(2)** the name of the creditor to whom the debt is owed;

**(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C.A. § 1692g(a). Plaintiffs show that the collection action included the amount of the debt and the name of the creditor to whom the debt was owed, but omitted the

information required by subsections (3)-(5). (Doc. 11-1; Doc. 76-1 at 2, 4). The debt was not paid within five days. (Doc. 76-1 at 2, 4). Alex Chesnut testified he had never sent a § 1692g notice to a consumer and that he did not recall having any communications with the Plaintiffs beyond the collection action. (Doc. 70-1 at 8; *id.* at 5). Plaintiffs aver the only correspondence they received from the Chesnut Defendants was the collection action. (Doc. 76-1 at 2, 4).

Having found that the Civil Summons and Affidavit of Sworn Account were the initial communication between the Chesnut Defendants and the Plaintiffs, Plaintiffs have established that the Chesnut Defendants failed to provide the information required by § 1692g(a)(3)-(5) to Plaintiffs within five days of that initial communication. The FDCPA grants a private right of action to a consumer who receives a defective communication. *Macy v. GC Servs., L.P.*, 897 F.3d 747, 758 (6th Cir. 2018). Accordingly, Plaintiffs are entitled to a finding that the Chesnut Defendants violated 15 U.S.C. § 1692g(a) by failing to provide the notice required thereby.

### C.   False Representation of the Legal Status of the Debt

Plaintiffs are no longer pursuing their claim that the Defendants falsely represented the character or legal status of the debt in violation of §§ 1692e(2)(A), 1692e(8), 1692e, and 1692e(10). (Docs. 76 at 2; Doc. 79 at 2; *see* Doc. 11 at ¶¶ 58, 59). Accordingly, this claim will be dismissed.

### D.   Filing the Collection Lawsuit in An Improper Venue

Plaintiffs claim Greeneville and the Chesnut Defendants violated 15 U.S.C.A. § 1692i(a)(2) by filing a collection action against Kasey Brooks in an improper venue.[4]

---

[4] According to Plaintiffs, this conduct also violated § 1692e, § 1692e(10), and § 1692f. They present no argument or evidence relative to these subsections. Because § 1692i governs the precise conduct alleged to violate the FDCPA, analysis under the broader provisions of §§ 1692e and 1692f is unnecessary.

Section § 1692i(a) requires a debt collector to bring a collection action in a specific venue depending on the nature of the suit. Unless a debt is secured by an interest in real property or arises out of a signed contract, the FDCPA requires "[a]ny debt collector who brings any legal action on a debt against any consumer" to bring that action in the judicial district in which the consumer resides at the commencement of the action. 15 U.S.C.A. § 1692i. As with other provisions of the FDCPA, a debt collector who fails to comply with this provision may be subject to civil liability under § 1692k. *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996) (attorneys who filed suit in a district prohibited by § 1692i violated the statute unless venue was waived).

Here, the collection action was filed in Greene County, Tennessee, and Kasey Brooks avers that she and her husband lived in Hamblen County, Tennessee, at the time the action was filed. (Doc. 11-1; Doc. 76-1 at ¶¶ 7-8). The Chesnut Defendants argue Plaintiff's declaration is unsubstantiated, but do not actually contend that she lived in Greene County when the suit was filed. (Doc. 84 at 2). The elements of the violation are thus established, leaving only the question of which Defendants may be liable therefor.

### 1. *Improper Venue as to Chesnut Defendants*

The record establishes that Alex Chesnut and Chesnut Law brought the collection action in a venue that was improper as to Kasey Brooks. The Chesnut Defendants do not challenge the elements of a violation, but rather, assert a bona fide error defense under 15 U.S.C. § 1692k(c). This section provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

13

15 U.S.C.A. § 1692k(c). Thus, "[t]o qualify for the bona fide error defense, a debt collector must prove by a preponderance of the evidence that: (1) the violation was unintentional; (2) the violation was a result of bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 614 (6th Cir. 2009) (*quoting Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476 (6th Cir. 2008)). The bona fide error defense to FDCPA liability "does not apply to a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 574 (2010).

The Chesnut Defendants offer the affidavit of Alex Chesnut, who avers he has "mental procedures" for determining where to file a collection action, namely, to examine his client's files and determine a venue. (Doc. 84-1 at 2). Yet Chesnut also testified that rather than investigating the residence of potential defendants prior to filing suit against them, he relies on the address they provided at the time of medical service. (Doc. 70-1 at 9). Further, the document Chesnut Law reviewed prior to filing suit shows an address for Kasey Brooks that is also not in Greene County. (Doc. 70-1 at 9, Doc. 11-1 at 1).[5] Neither Chesnut's deposition testimony nor his declaration indicate he considered the residence of the consumer in determining where a lawsuit should be filed.

The evidence offered by the Chesnut Defendants is insufficient to establish by a preponderance of the evidence that they are entitled to a bona fide error defense under § 1692k(c). Taking as true Chesnut's vague assertion that he had mental procedures in place to avoid the filing of the lawsuit in an improper venue, Chesnut has not shown these

---

[5] The address for the Plaintiffs is redacted in the copy of the Debtor Master File submitted to the Court by Greeneville Collection. Nonetheless, Mr. Chesnut testified the address was not in Greene County and there appears to be no dispute on this score. (Doc. 70-1 at 9).

procedures were reasonably adapted to avoid the error. The bona fide error defense is the Chesnut Defendants' only argument against liability on this claim and Kasey Brooks has otherwise established all elements of her claim. In the absence of any genuine dispute as to a material fact, Kasey Brooks is entitled to a judgment that the Chesnut Defendants violated 15 U.S.C.A. § 1692i by filing the collection action against her in an improper venue.

### 2. Improper Venue as to Greeneville Collection

Initially, Greeneville Collection raises two procedural challenges to Plaintiffs' summary judgment motion. First, Greenville argues the memorandum in support of the motion is untimely. (Doc. 77 at 1-2). Greenville claims no prejudice as a result of the one-day delay in filing the supporting memorandum. As the parties' cross-motions for summary judgment involve substantially similar issues, the Court will decide the matter on the merits.

Second, Greeneville characterizes Plaintiffs' arguments as asserting two entirely new claims against Greeneville: 1) that Greeneville was "involved" in bringing the lawsuit that allegedly violated various FDCPA provisions, and 2) that Greeneville is vicariously liable for any FDCPA violations of the Chesnut Defendants. There is no serious basis for Greeneville's contention that these are new, independent claims. Plaintiffs have always alleged Greeneville brought the collection action against them in state court in violation of the same sections of the FDCPA. Similarly, Greeneville's persistent focus on the allegations of the Complaint is misguided, as the question before the Court is not the sufficiency of the pleadings, but whether the record demonstrates the existence of a genuine dispute of material fact for trial (*See* Doc. 77 at 4-5). Plaintiffs' failure to

anticipate and allege all facts supporting their claim is irrelevant on a summary judgment motion.

The parties dispute whether Greeneville Collection may be liable for violating § 1692i(a), either directly as a debt collector who brought the collection action, or vicariously due to their relationship with the Chesnut Defendants. The United States Court of Appeals for the Sixth Circuit has not spoken to this precise issue, but related authority and precedent from other Circuits indicate a genuine dispute remains for trial.

Where a collection agency and its attorney both qualify as debt collectors, both may be liable for violating the FDCPA if the attorney brings a collection action on behalf of the debt collector in an improper venue. In *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996), the Sixth Circuit held that a client who was not also a debt collector could not be vicariously liable for its attorney's FDCPA violations. The court observed that if the client *were* a debt collector, "it would appear to accord with the intent of Congress for [the client] to be held directly liable to a consumer whom [it] sued in the wrong judicial district." *Id.*

Likewise, other circuit courts have held that liability may be imposed on debt collectors who hire attorneys to bring collection actions that violate the FDCPA. *See Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1516 (9th Cir. 1994) ("In order to give reasonable effect to section 1692i, we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken."); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) ("[W]e think it is fair and consistent with the Act to require a debt collector who is independently obliged to comply with the Act to monitor the actions of those it enlists to collect debts on its behalf."). As the court observed in *Wadlington*, the FDCPA initially included an

16

exemption for attorneys. *Wadlington*, 76 F.3d at 108 (*citing Fox*, 15 F.3d at 1516). "If we were to conclude… that debt collectors are shielded from liability for venue violations whenever a legal action is filed by an attorney, we would have to decide that section 1692i was superfluous as originally enacted." *Fox*, 15 F.3d at 1516.

These cases suggest the "key question" in determining liability "is whether the defendant whom the plaintiff seeks to hold vicariously liable is itself a debt collector." *Janetos*, 825 F.3d at 325. They do not directly answer the question before the Court in this case: whether a debt collector who is not a party to the collection action but hires and pays an attorney to file it may be liable if the filing violates the FDCPA. Put differently, the question is whether Greeneville may be directly liable as a debt collector who "brings" an action in an improper venue, or vicariously liable for the venue violation of the attorney it hired. With respect to vicarious liability, general principles of agency also govern vicarious liability under FDCPA, making principals liable for the acts of their agents when the agents act within the scope of their authority. *White v. Sherman Fin. Grp.*, 984 F. Supp. 2d 841, 854 (E.D. Tenn. 2013) (*quoting Clark v. Capital Cred. & Collection Servs., Inc.,* 460 F.3d 1162, 1173 (9th Cir. 2006)). For a principal-agent relationship to exist, the principal must exercise control over the conduct or activities of the agent. *Id.*

Greeneville Collection was not the named plaintiff in the state court action. There is no allegation Greeneville was the owner or assignee of the debt. The collection action identifies Laughlin Memorial Hospital, Inc., as the creditor and plaintiff, and Alex Chesnut as attorney for the plaintiff. (Doc. 11-1). Despite Plaintiffs' contention, the record is clear that Greeneville in fact did not direct Chesnut Law to file the lawsuit in a specific

county. (Doc. 70-2 at 20).[6] Chesnut testified Greeneville Collection does not instruct him as to the preparation or filing of lawsuits. (Doc. 70-1 at 10). He further testified that Chesnut Law has filed lawsuits for other creditors of Greeneville, and on one or two occasions, those clients have contacted his office directly, rather than via Greeneville. (*Id.* at 11).

Yet the record also demonstrates Greeneville played a significant role in preparing and facilitating the lawsuit, including: (i) referring the account to the Chesnut Defendants for filing of a lawsuit (Doc. 70-2 at 14); (ii) generating a summary of account information and providing it to Chesnut Law (Doc. 70-1 at 6; Doc. 70-2 at 15); (iii) instructing Chesnut Law to file suit against both patient and spouse; (iv) taking the Affidavit of Sworn Account prepared by Chesnut Law to Laughlin Memorial for signature and returning it to Chesnut Law for filing (Doc. 70-1 at 4; Doc. 70-2 at 5, 7); (v) paying the filing fee for the collection action out of pocket (Doc. 70-2 at 8); (vi) paying the process server fee out of pocket[7] (Doc. 70-2 at 17); and (vii) paying Chesnut Law's legal fee for its representation of Laughlin in the collection action (Doc. 70-2 at 8). Moreover, Greeneville's representative testified she normally attended hearings in cases referred to Chesnut Law, though she could not specifically recall if she attended the hearing in the action against Plaintiffs. (Doc. 70-2 at 8). In these hearings, she assists Alex Chesnut with paperwork in lieu of a paralegal or assistant from Chesnut Law. (*Id.*). Gosnell also testified that to her knowledge, Chesnut

---

[6] Plaintiffs repeatedly cite the Gosnel deposition for the proposition that Greeneville instructed Chesnut Law to file suit in Greene County. (Doc. 76 at 9; Doc. 82 at 4; Doc. 89 at 6). This is plainly wrong, as Gosnel testified precisely the opposite was the case – that Greeneville did not instruct Chesnut Law to file suit in any particular county. (Doc. 70-2 at 20).

[7] The record reflects that Chesnut paid the filing fee and service of process fee for the collection action, but was immediately reimbursed by Greeneville. (Doc. 70-2 at 8).

Law had never filed a lawsuit at the behest of Greeneville in any county other than Greene County. (Doc. 70-2 at 20).

There also appears to be a factual dispute as to the relationship between the Chesnut Defendants and Greeneville Collection. Though Greeneville argues it had no principal-agent relationship with Chesnut Law, Greeneville's representative testified that Alex Chesnut was Greeneville's attorney. (Doc. 70-2 at 12-13). She testified there was no written agreement between Chesnut and Greeneville, only a verbal agreement. (*Id.* at 9). Chesnut testified he did not know if he had a written representation agreement with Greeneville, but that he did have one with Laughlin at one time. (Doc. 70-1 at 7). In their Answer to the Complaint, the Chesnut Defendants stated that Chesnut "serves as the attorney for Greeneville Collection Service in the prosecution of collection lawsuits." (Doc. 21 at ¶ 18).

There is a genuine dispute as to Greeneville's direct or vicarious liability for the filing of the collection action in an improper venue. Greeneville had reason to know Chesnut would file the Brooks lawsuit in Greene County, where he had filed every other lawsuit for Greeneville. *See Janetos*, 825 F.3d at 326 (where principal is a debt collector, actual control over specific challenged conduct is not required); *Fox*, 15 F.3d at 1516 (rejecting argument that debt collector could not be vicariously liable for decision "made solely by" its attorney). The record suggests Greeneville controlled which accounts were referred to Chesnut, what account information Chesnut Law received, and which parties Chesnut Law filed suit against. Greeneville apparently considered Alex Chesnut to be its attorney. Whatever the technical arrangements, "[a] debt collector should not be able to avoid liability for unlawful debt collection practices simply by contracting with another company to do what the law does not allow it to do itself." *Janetos*, 825 F.3d at 325; *see*

*also Conner v. Howe*, 344 F. Supp.2d 1164, 1169 (S.D. Ind. 2004) ("When several independent actors concurrently or consecutively produce a single, indivisible injury, each actor is held jointly responsible for the entirety of damages resulting from the concerted activity."). If there is authority for the proposition that a debt collector cannot, as a matter of law, be liable for the FDCPA violations of a law firm it hires to file a collection action unless it is also the plaintiff in that action, Greeneville has not cited it.

In the absence of controlling authority that would categorically shield Greeneville from liability, there are genuine issues of material fact as to whether Greeneville brought the action against Plaintiffs in an improper venue within the meaning of § 1692i or may be held vicariously liable for the Chesnut Defendants' bringing the action in an improper venue. The summary judgment motions of Greeneville and Plaintiffs will both be denied as to this claim.

### E. False Representation that a Communication is from an Attorney

Plaintiffs claim Greeneville and the Chesnut Defendants falsely represented or implied that the Civil Summons and Affidavit of Sworn Account were from an attorney, in violation of 15 U.S.C.A. § 1629e(3). (Doc. 11 at ¶¶ 72, 74). The FDCPA's prohibition on false, deceptive, and misleading representations set forth in § 1692e specifically includes: "The false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C.A. § 1692e(3). Courts in the Sixth Circuit use a "least-sophisticated-consumer" test for determining whether a debt collector's practice is deceptive. *Kistner v. Law Offices of Michael Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008). The test is an objective one, designed "to ensure the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* (*quoting Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F3d. 504, 509 (6th Cir. 2007)).

20

In *Kistner*, the defendant attorney operated both a law firm and a debt collection agency. *Id.* at 434. The plaintiff received a collection letter in which the letterhead, signature block, and remittance form referred to "the law offices of Michael Margelefsky, LLC." *Id.* at 434-35. But the letter also indicated it was from a debt collector and was signed by an "Account Representative." *Id.* at 440. The attorney did not review the plaintiff's file, did not determine whether particular letters should be sent, and did not know the identities of the persons to whom the letters were sent. *Id.* Based on this level of involvement, the Sixth Circuit concluded that "if the letter sent to [plaintiff] would give the least sophisticated consumer the impression that the letter was a communication from an attorney, then that impression was false." *Id.* (internal citation and punctuation omitted). Applying the least-sophisticated consumer test, the court overturned the district court's grant of summary judgment to the attorney, finding there was a fact issue as to whether the letter gave the impression it was from an attorney even though it was not. *Id.* at 441.

### 1. *False Representation that a Communication is from an Attorney as to the Chesnut Defendants*

Following *Kistner*, the collection action undoubtedly conveys that it is from an attorney, as the Affidavit of Sworn Account bears the letterhead of Chesnut Law Office, LLP, "Attorneys at Law." (Doc. 11-1 at 2). Construing the record in his favor, Chesnut reviewed at least the Debtor Master File before filing the collection action. (Doc. 70-1 at 6, 7). This document is a one-page screenshot showing a computer program opened on a Greeneville computer. (Doc. 70-2 at 15). The image shows the debtor name, guarantor,[8]

---

[8] Greeneville and Chesnut Law apparently understood this term to refer to the spouse of the patient. (Doc. 70-1 at 9; Doc. 70-2 at 16).

client, balance due, date account was placed, date last letter was sent, debtor's year of birth, and his employment. (Doc. 70-1 at 64). In his Declaration, Chesnut avers he reviewed unspecified documents and decided he had enough information to conclude the Plaintiffs owed an unpaid debt to Laughlin. (Doc. 74-1).

A court in this district has previously held that "where the attorney had merely reviewed the affidavit of sworn account, but no underlying documents or files" there was a genuine issue of material fact "as to whether including the name of an attorney on a civil warrant… may lead the least sophisticated consumer to believe that an attorney has deemed her file ripe for legal action." *Dickerson v. CBET, Inc.*, No. 2:14-cv-174, 2016 WL 7799578 (E.D. Tenn. March 14, 2016). Similarly, there is no evidence Alex Chesnut reviewed any of the underlying documents used to generate the Debtor Master File, such as a ledger, balance sheet, collection activity log, consent to treatment, or search results reflecting residence or marital status. The record is silent as to whether he made any independent determination that a collection action should be filed against the Plaintiffs. Accordingly, there is a genuine dispute of material fact as to whether the collection action created a false representation or implication that Alex Chesnut was meaningfully involved in the Plaintiffs' account prior to filing the collection action. Neither the Chesnut Defendants nor the Plaintiffs are entitled to summary judgment on this claim.

> 2. *False Representation that a Communication is from an Attorney as to Greeneville Collection Service*

First, Greeneville contends the claim is time-barred because the Affidavit of Sworn Account was signed more than a year prior to the filing of this action. (Doc. 77 at 11). Greeneville cites no authority for the proposition that the one-year statute of limitations began to run when Laughlin Memorial's representative signed the Affidavit of Sworn

Account, rather than when the document was filed or subsequently served on the Plaintiffs. Because the violation alleged is a false representation, it follows that there must be someone to whom the representation was made. This action was filed on August 28, 2018, exactly one year after the Civil Summons was filed, and therefore is within the one-year statute of limitations of the FDCPA.[9]

As set forth in section III.D.2, above, there is a genuine issue of material fact as to whether Greeneville may be vicariously liable for the conduct of the Chesnut Defendants relative to the collection action. Because there is a genuine issue of fact as to whether the Chesnut Defendants falsely represented that the collection action was from an attorney, there likewise remains a genuine issue of fact as to Greeneville's liability.

## IV. CONCLUSION

For the reasons set forth herein, it hereby **ORDERED**:

1. Plaintiffs' claim that Defendants falsely represented the character or legal status of the debt in violation of §§ 1692e(2)(A), 1692e(8), 1692e, and 1692e(10) is **DISMISSED**;

2. Plaintiffs' Partial Motion for Summary Judgment (Doc. 75) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. The motion is **DENIED AS MOOT** as to Plaintiffs' claim that the Defendants attempted to collect interest and collection fees from Kasey Brooks without a signed contract, as this claim was previously dismissed by the Court;

---

[9] The Chesnut Defendants argue the FDCPA claims are time-barred "to the extent that they rest upon the filing of the Collection Lawsuit." (Doc. 74 at 8). The relevant dates do not support this claim.

b. The motion is **GRANTED** as to Plaintiffs' claim that Alex Chesnut and Chesnut Law Office, LLP, failed to send Plaintiffs the disclosures required by 15 U.S.C. § 1692g(3)-(5).

c. The motion is **GRANTED** as to Plaintiffs' claim that Alex Chesnut and Chesnut Law Office, LLP brought an action against Kasey Brooks in an improper venue in violation of 15 U.S.C. § 1692i;

d. The motion is **DENIED** as to Plaintiffs' claim that Greeneville Collection Service, Inc., brought an action against Kasey Brooks in an improper venue in violation of 15 U.S.C. § 1692i;

e. The motion is **DENIED** as to Plaintiffs' claim that Greeneville Collection Service, Inc., Alex Chesnut, and Chesnut Law Office, LLP, falsely represented or implied that a communication was from an attorney, in violation of 15 U.S.C. § 1692e(3); and

3. Greeneville Collection Service, Inc.'s Motion for Summary Judgment (Doc. 69) is **DENIED**.

4. The Motions for Judgment on the Pleadings of Alex Chesnut and Chesnut Law Office, LLP (Docs. 65 and 71) are **DENIED**;

5. The Motion for Summary Judgment (Doc. 73) of Alex Chesnut and Chesnut Law Office, LLP is **DENIED**.

Remaining for trial are (i) Plaintiffs' 15 U.S.C. § 1692i claim against Greeneville Collection Service, Inc., for bringing a collection action in an improper venue, (ii) Plaintiffs' 15 U.S.C. § 1692e(3) claim against Greeneville Collection Service, Inc., Alex Chesnut, and Chesnut Law Office, LLP, for false representation or implication that a

communication is from an attorney, and (iii) damages. The trial of these claims and all unexpired deadlines will be rescheduled by separate order.

      **SO ORDERED** this 10th day of December, 2019.


                        _____*/s/ Harry S. Mattice, Jr.*_____
                        HARRY S. MATTICE, JR.
                        UNITED STATES DISTRICT JUDGE